### INHABITANTS OF BERLIN *vs.* INHABITANTS OF BOLTON.

Under the Rev. Sts. *c.* 45, § 1, clause 12, which provide that a person shall gain a set-tlement in a town by residing therein for the space of ten years together, and paying all taxes duly assessed on his poll or estate for any five years within said time, a set-tlement is not gained by his residing in a town for ten years together, and possessing real and personal estate, if the assessors omit to tax him; though such omission is not on account of his infirmity or poverty, or by mistake, but in order to prevent his acquiring a settlement: Evidence, therefore, that a person, who has resided in a town ten years together, possessed such estate, and that the assessors thus omitted to tax him, is not admissible in proof of his having gained a settlement in such town.

ASSUMPSIT to recover expenses incurred for the support of Timothy B. Wheeler and his wife, paupers, whose settlement was alleged to be in Bolton.

At the trial in the court of common pleas, before *Wells,* C. J. the only point in dispute was the settlement of the paupers. It was admitted by the defendants that Timothy B. Wheeler formerly had his settlement in Bolton, and that it still con-tinued there, unless he had acquired one in Berlin. It was agreed that said Wheeler had resided in Berlin, ever since the

year 1826, and that no taxes had been there assessed to or paid by him. But the defendants contended that, notwithstanding the omission of the assessors of Berlin, he had acquired a settlement there ; and they offered evidence to prove that, during more than five years in ten successive years, said Wheeler was possessed of real and personal estate, and that the omission of said assessors to tax him was not on account of his age, infirmity or poverty, or through mistake, but in order to prevent his acquiring a settlement in Berlin.

The judge ruled that said evidence was inadmissible, and rejected it. A verdict was thereupon rendered for the plaintiffs, and the defendants alleged exceptions to said ruling.

*F. H. Dewey*, for the defendants. The defence, in this case, is placed on the Rev. Sts. *c. 45, § 1*, clause 12, and the construction heretofore given to that clause. In *Wrentham* v. *Attleborough*, 5 Mass. 433, 434, the reason and policy of the settlement law were well stated, and Parsons, C. J. said, " we cannot admit a construction of the statute, by which the real intent and design of it may be frustrated by a breach of duty in the assessors, voluntarily committed to defeat the statute." That case was cited by the court, in *Billerica* v. *Chelmsford*, 10 Mass. 396, without questioning it. In *Conway* v. *Deerfield*, 11 Mass. 330, it was left to the jury to decide whether the assessors omitted to tax the pauper from any corrupt or improper motives, or because he was unable to pay taxes. And in *Reading* v. *Tewksbury*, 2 Pick. 535, it was held that the jury should have found the reason why the pauper was not taxed. It appears from *Robbins* v. *Inhabitants of Townsend*, 20 Pick. 345, that ability to pay a tax is, for some purposes, equivalent to payment. The strongest case against the defendants is *Monson* v. *Chester*, 22 Pick. 385 ; but even in that case the court did not impugn the doctrine on which the present defence is placed.

A town cannot set up the frauds of its officers to avoid its liabilities. *Charlemont* v. *Conway*, 8 Pick. 408. Assessors are the agents of their town, and the town is bound by their acts.

*Newton & B. F. Thomas*, for the plaintiffs.   The clause in the statute, on which the defendants rely, provides that a person shall gain a settlement in a town, if he reside therein "for the space of ten years together, and *pay* all state, county or town taxes, duly assessed on his poll or estate, for any five years within said time."   Questions of settlement are to be decided on a strict construction of the statute provisions, and by the positive rules of discrimination therein enacted. Per Sewall, J. 10 Mass. 397.   Per Shaw, C. J. 10 Pick. 513, and 12 Pick. 5, 6.   Per Morton, J. 22 Pick. 387.

The *dicta* in 5 Mass. 434, which affect the case at bar, were extrajudicial.   The point there adjudged does not touch it.   Those *dicta* were first met in 2 Pick. 535, and were there departed from, as they were subsequently in 8 Pick. 408.   In *Shrewsbury* v. *Salem*, 19 Pick. 389, a discharge of a party, by the town, from a part of his tax, for the fifth year, was held to prevent his gaining a settlement.   The case of *Robbins* v. *Inhabitants of Townsend*, 20 Pick. 345, went still further, and decided that a party, on whom a tax was assessed, was prevented from gaining a settlement, by the negligent omission to collect it.   And it is impossible to find any distinction, in principle, between the present case and that of *Monson* v. *Chester*, 22 Pick. 385.

Assessors are bound to act by rules of law, and not by the direction of the town.   They are therefore not the agents of the town, and the town is not responsible for their acts.

*C. Allen*, in reply.   The case of *Wrentham* v. *Attleborough*, does not contain mere *dicta* only, that apply to the case at bar.   That case *proceeded on the ground* that an intentional omission to assess a person, who ought to be assessed, will not avail the town.   And that doctrine is not impugned by any subsequent adjudication.   Long after that decision, there was a legislative adoption of the construction there given to *St.* 1793, *c.* 34, § 2, clause 12, by a reënactment of that clause, in the same terms, in Rev. Sts. *c.* 45.

In 10 Mass. 397, Sewall, J. says, " we must not render the rule uncertain, the line variable and shifting, by yielding to

arguments of expediency," &c. And the present plaintiffs ask the court not now to shift the rule of thirty five years' standing. The policy of that rule is manifest. It removes from assessors the temptation to tamper with their duty and oaths.

SHAW, C. J. The court are called upon to decide a question, in the present case, which has been often alluded to, in settlement cases, but not adjudicated. The defendants admit that they are liable to reimburse the expenses incurred by the plaintiffs for the relief of Timothy B. Wheeler and his wife, unless said Timothy had acquired a settlement in Berlin. The defendants claim that he did so acquire a settlement by the twelfth mode provided by the Rev. Sts. *c.* 45, § 1. The twelfth mode of gaining a settlement is thus stated : " Any person of the age of twenty one years, being a citizen," &c. " who shall reside within any town in this State, for the space of ten years together, and pay all state, county or town taxes, duly assessed on his poll or estate, for any five years within said time."

It appears by the bill of exceptions, that Wheeler had resided and had his home, more than ten years together, in Berlin ; and that during that time he had paid no tax, and no tax had been assessed to him. Thus far, it is very obvious that he is not brought within the statute. But the defendants offered to prove that, during more than five years in ten successive years, Wheeler was possessed of real and personal estate, and that the omission of the assessors to tax him was not on account of his age, infirmity or poverty, or through mistake, but in order to prevent his acquiring a settlement in Berlin. This evidence was rejected. We are therefore bound, now, to consider the question in the same manner as if these facts were proved ; and the question is, if found by a jury, whether they would prove a settlement gained by Wheeler.

It has been so often determined that the obligation of towns to support paupers results from the provisions of positive law, that towns must be brought strictly within them, and that analogy, equitable construction and approximation, are

all insufficient, that we should have probably said, at once, that here were no facts showing a settlement of the pauper acquired in Berlin, were it not for the authority, cited in support of that point at the argument, of *Wrentham* v. *Attleborough*, 5 Mass. 430.   That case seems to be cited as an authority, that if a man have taxable property, and the assessors fail to assess any tax upon him, either by mistake, or designedly to prevent his gaining a settlement, he will gain a settlement notwithstanding.   But it does not go to that extent, but only that if he is in fact assessed to state and town taxes, and pays them, though his county tax is omitted, he pays all that is duly assessed upon him, and therefore gains a settlement.   If, as is supposed, it went further, and decided that a wilful and designed omission of the assessors to assess a tax on one liable and able will be considered the same, for the purpose of gaining a settlement, as if he had been assessed and paid his tax, it is manifest that no such point was argued, and no fact proved of such wilful omission.   The court intimate it as possible, and then proceed to put it on another ground, viz. that of mistake.   We cannot find that this case has been acted on as an authority to the point now in question.

In *Billerica* v *Chelmsford*, 10 Mass. 394, it is alluded to, not adjudicated ; the point decided was, that the party was only bound to pay such taxes as were duly assessed.   In *Conway* v. *Deerfield*, 11 Mass. 327, the point was stated, in the facts, whether a designed omission to assess would have the effect of an assessment ; but it was not alluded to by the court, nor .involved in the decision.   In *Reading* v. *Tewksbury*, 2 Pick. 535, it was decided that the mere omission to tax one, where the cause for such omission does not appear, is not equivalent to an actual taxation, and that it is not sufficient that the person had taxable property.   Perhaps, by suggesting a hypothetical case of a designed omission to tax, the court may imply that such a case would have a different construction.

In *Charlemont* v. *Conway*, 8 Pick. 408, there is no adjudication upon the point ; but in the course of the opinion the court say, " it may be doubtful whether a town can, at any

time, set up its own illegal proceedings in regard to taxes, or the misconduct of its officers after the taxes have been paid, to defeat the settlement gained thereby." Here is stated the supposed principle upon which the position is founded, and it may be as well to consider it, at this point.

In the first place, it is obvious that it is for the town attempting to establish a settlement, to prove affirmatively the facts on which the law gives a settlement. Besides ; the observation relied on is founded on the notion of estoppel, and it assumes that the wilful omission to assess a tax is the illegal act of the town or its officers. But we think this cannot be maintained. The assessment, or omission to assess a tax, is not the act of the town, or one over which they have any control. They cannot, by their vote, require or forbid such assessment. And further ; the assessors are not the officers of the town, in the sense of being their agents, liable to be directed, controlled or restrained by the town. They are chosen by the town, and have important duties to perform in and for the town ; and in this sense are town officers. But their duties are prescribed, regulated and limited by law ; and the voters and town inhabitants are the very subjects over whom their authority is to be exercised. Their duties are regulated by provisions of law, and secured by the sanction of an oath. How then can the town be bound or estopped, or its rights implicated, by the illegal acts of those who are not their agents, and over whose conduct they have no power ? It appears to us, rather, that they are a class of officers, constituted by law, whose official acts, done within the scope of their authority, are entitled to the presumption of law that *omnia rite acta sunt.* This presumption is conclusive as to the general acts done by such officers, unless when an individual can show himself aggrieved by some abuse of such authority ; in which case he will have his remedy against the wrong-doer.

And this leads us to another consideration, which we think of great importance, and that is, the nature and difficulties of the proof which the adoption of the proposed rule would

require.   In a system so deeply interesting to the community as that of the support of the poor, attended with so heavy an expense in the working, and to be carried into operation by so large a body of officers, it is important that it should depend, as far as possible, upon a few plain principles of law, and those applied to a state of facts capable of easy, plain and precise proof.   Now, what is the proof offered in the present case ?   It was, that Wheeler, during five years of the ten years, was possessed of real and personal estate ; also, though not embraced in the offer, yet necessarily implied, that it was subject to taxation ; that he was able to pay, and in all probability would have paid such taxes ; involving the question of his general pecuniary ability, his debts, his age, health, capacity to labor, and dependent connections.   The offer, also, in terms, was further to prove several negatives ; that the omission of the assessors to tax him was *not* on account of his age, *nor* infirmity, *nor* poverty, *nor* through mistake, but from an illegal and corrupt motive, contrary to their duty, in order to prevent his acquiring a settlement in Berlin.   How can this state of mind, and these illegal motives of the assessors, be proved ? There may be three or more chosen, and also assistant assessors.   Shall the proof extend to the whole, or to a majority, or to a single one ?   Such proof may apply as well to a derivative as to a personal settlement ; to the pauper whose present support is the subject of controversy, or to his great grandfather, and extend back ten or seventy years.   Besides ; the point is, to establish a settlement by proof of facts, of the nature described, for all purposes.   If it is to be a subject of inquiry before a jury, it must be a subject of preliminary inquiry and discussion between towns.

It seems sufficient to allude, in the briefest manner, to the difficulties of such proof, and to the expense and litigation to which it would tend.   May it not then be considered more consistent with correct principle, as well as more conducive to useful ends, to regard the acts of officers of the law, whose duties are secured and guarded by such sanctions, as the evidence, which the law has provided, of acts rightfully and properly

done, so far as the condition and rights of other persons are established by and dependent upon them, than to throw them open to an inquiry, perhaps after a great lapse of time, which would be attended with great difficulty, and often lead to no satisfactory result ?

Since the decision which was the immediate occasion of the foregoing remarks, there have been several, which we think go far to settle the present question by authority. In *Shrewsbury* v. *Salem*, 19 Pick. 389, it was decided that the voluntary remission of·a tax, by vote of the town, was not equivalent to a payment, in gaining a settlement. In *Robbins* v. *Inhabitants of Townsend*, 20 Pick. 345, it was held that the omission of a collector to collect a tax duly assessed, though accompanied by an offer of evidence to show that by a due diligence it might have been collected, did not supply the want of proof of payment of the tax, in deciding the question of settlement. In *Monson* v. *Chester*, 22 Pick. 387, the whole subject is fully discussed and the cases reviewed ; and if it is not a precise authority for the present case, it affirms principles upon which we think this must be decided.

The court are of opinion that the evidence offered by the defendants was rightly rejected, that the exceptions must be overruled, and judgment entered on the verdict for the plaintiffs.